UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


KEVIN HAYES,

           Plaintiff,                                Civil No. 09-47-HA

        v.                                  OPINION AND ORDER

WAL-MART STORES, INC., and
WAL-MART STORES EAST L.P.,

           Defendants.

_____

HAGGERTY, District Judge:

      Plaintiff brought suit against defendants asserting eleven claims for violating Title VII of the

Civil Rights Act, unlawful retaliation in violation of that Act, unlawful discrimination in violation

of state laws, unlawful retaliation in violation of state laws, disability discrimination and failure to

accommodate in violation of federal and state laws, discrimination, harassment and retaliation in

violation of 42 U.S.C. § 1981, workers compensation discrimination and retaliation in violation of

state law, and intentional infliction of emotional distress. Pretrial Order at 1-2.


OPINION AND ORDER -1

Defendants move for partial summary judgment on plaintiff's claims.  The court has determined that oral argument on this motion is unnecessary.  For the following reasons, defendant's motion is granted in part.

I.      **BACKGROUND**

Plaintiff is a resident of Oregon.  He is of the Jewish faith and race.  Defendants are private corporations organized and existing under the laws of the State of Delaware, authorized to do business in Oregon, and in good standing with the State of Oregon.

On August 31, 2004, plaintiff was hired by defendant Wal-Mart Stores East, L.P., to serve as what is referred to as a "5th Shift DAR Unloader."  Pretrial Order at 2.  This position was located at the Wal-Mart Distribution Center (DC) #6037 in Hermiston, Oregon.  Plaintiff was scheduled to work the overnight shift on Fridays, Saturdays and Sundays.  Plaintiff requested power equipment training at some point after he was hired in August 2004.  *Id.*

Plaintiff received what the parties refer to as his "RC" forklift license in April 2005.  He was provided with a personal leave of absence related to his mother's health from December 23, 2005, to January 6, 2006, and additional intermittent leave through January 22, 2006.  Plaintiff also received "slip and clamp" power equipment training during January 2006.  Pretrial Order at 3.

Plaintiff began corresponding with defendants' representatives in the summer of 2006.  The nature and substance of this correspondence is detailed as necessary below.  Plaintiff suffered a work-related injury on August 21, 2006.  He was granted a leave of absence until September 29, 2006, related to this injury.  Plaintiff was transferred to light duty work after he was released to work on September 22, 2006, and performed light duty until December 20, 2006.  Pretrial Order at 3-4.

OPINION AND ORDER -2

On December 22, 2006, plaintiff submitted a partially completed Reasonable Accommodation Form.  He did not sign a Release of Medical Information Form.  Pretrial Order at 4.  He corresponded with defendants' representatives regarding these matters over the ensuing weeks.  Pretrial Order at 4-5.  Details regarding this correspondence are detailed below where relevant.

In May 2007, defendants initiated an investigation regarding plaintiff's complaints.  Plaintiff was excused from work but continued to receive wages.

Plaintiff filed an employment discrimination complaint with the Oregon Bureau of Labor and Industries (BOLI) on September 11, 2007.  A similar filing was made to the Equal Employment Opportunity Commission (EEOC).  Pretrial Order at 5.

Plaintiff was excused from reporting to work but was paid through September 17, 2007.  Plaintiff alleges that defendants stopped paying him any wages on September 18, 2007, after concluding that his complaints were baseless.  Plaintiff asserts that he was not notified that defendants completed their investigation and had decided to stop paying his wages.

Plaintiff was advised to return to work in October 2007.  Plaintiff objected.

On December 7, 2007, termination paperwork was added to plaintiff's personnel file, including an Exit Interview form.  This form was signed by defendants' representatives on December 6 and 7, 2007.  *Id.*

Plaintiff alleges that he was subjected to a pattern and practice of anti-Semitism, religious and racial discrimination, and continual harassment by defendants' employees and management as a result of his religion and/or race.  These allegations were reported repeatedly to defendants' managers.  Plaintiff alleges that defendants engaged in a continuous systematic course of unlawful

intentional discrimination against plaintiff, and created a hostile work environment. He asserts that his race and/or religion were either the sole reasons or were motivating factors for Wal-Mart's decision to terminate his employment.

Plaintiff claims that he has suffered lost income and benefits. He asserts that he is entitled to reinstatement to a position of comparable pay, or to economic damages, compensatory damages for emotional distress, and punitive damages.

Plaintiff also claims that defendants retaliated against him for filing complaints with BOLI and the EEOC, and violated state discrimination and unlawful retaliation laws. And, as noted above, plaintiff also asserts disability discrimination and failure to accommodate in violation of federal and state laws, discrimination, harassment and retaliation in violation of 42 U.S.C. § 1981, workers compensation discrimination and retaliation in violation of state law. Plaintiff also asserts a claim for intentional infliction of emotional distress.

Defendants seek partial summary judgment, arguing that aspects of plaintiff's disparate treatment claims (Claims 1, 3, 5, 6, and 10) should be dismissed. Defendants also contend that plaintiff's failure to accommodate claims (Claims 7 and 8), and the workers compensation and related retaliation claim (Claim 11) under state law should be dismissed.

Although oral argument was requested, the court deems further argument unnecessary. For the following reasons, this partial summary judgment motion is granted in part.

Remaining for trial are plaintiff's allegations regarding disparate treatment, a hostile work environment (pursuant to defendants' waiver of arguments against such claims in their Reply at 19), the retaliation claims brought under federal and state law in Claim 2 and Claim 4, and plaintiff's intentional infliction of emotional distress claim brought under Claim 9.

OPINION AND ORDER -4

II.    **STANDARDS**

1.    **Summary judgment**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

On summary judgment, the court must view the facts and draw inferences in the manner most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Defendant, the moving party, bears the initial burden of demonstrating the absence of a genuine issue of material fact for trial, but it need not disprove the other party's case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986). Once the moving party meets its burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248-49.

If the moving party meets its initial burden of showing the absence of a material and triable issue of fact, the burden then moves to the opposing party, who must present significant probative evidence tending to support its claim or defense. *Intel Corp. v. Hartford Acc. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991) (quoting *Richards v. Neilsen Freight Lines*, 810 F.2d 898, 902 (9th Cir. 1987)).

Deference to the non-moving party has limits. The non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The "mere

existence of a scintilla of evidence in support of the [non-moving party's] position would be insufficient." *Anderson v. Liberty Lobby Inc.,* 477 U.S. 242, 252 (1986).  Where "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

However, the Ninth Circuit has reasoned that courts should require very little evidence to survive summary judgment in an employment discrimination case, because the ultimate question is one that is most appropriately conducted by the fact-finder, upon a full record.  *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996).

### 2.    Discrimination standards

The Americans with Disabilities Act (ADA) prohibits discrimination by certain entities, including private employers, against qualified individuals with a disability and, in some cases, against persons perceived to be disabled.  Specifically, it provides that no employer falling within the scope of the ADA "shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."  42 U.S.C. §§ 12112(a); *see also* 42 U.S.C. § 12111(5) (defining employer).

A "qualified individual with a disability" is identified as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).  The ADA defines an individual with a disability as someone who: (1) has a physical or mental impairment that

substantially limits one or more of the individual's major life activities; (2) has a record of the impairment; or (3) is regarded as having an impairment.  42 U.S.C. § 12102(2)(A).

Oregon's Discrimination Against Disabled Persons in Employment Act (the Oregon Act) is in part modeled after the ADA and contains language that is similar to the ADA.  *Wheeler v. Marathon Printing, Inc.*, 974 P.2d 207, 213 n.6 (Or. Ct. App. 1998).  The Oregon Act provides that "O.R.S. 659A.112 to 659A.139 shall be construed to the extent possible in a manner that is consistent with any similar provisions of the [ADA]."  ORS 659A.139.  Oregon's law tracks the ADA and defines "disability" in an identical manner.  ORS 659A.100.

An individual suffers "disparate treatment" when that individual is singled out and treated less favorably than others who are similarly situated on account of race.  *McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1121-22 (9th Cir. 2004) (internal citations and quotation omitted).  A plaintiff may respond to a summary judgment motion either by using the framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), in which a plaintiff must first establish a *prima facie* case of discrimination, or by producing direct or circumstantial evidence demonstrating that a discriminatory reason more likely than not motivated the defendants.  *McGinest*, 360 F.3d at 1122 (citations omitted).

Hostile work environment claims fall within Title VII's protections, as well.  *Harris v. Forklift Sys.*, 510 U.S. 17, 21 (1993).  To survive summary judgment on a claim based on a hostile work environment, a plaintiff must show that: (1) he or she was subjected to verbal or physical conduct; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the conditions of his or her employment and create an abusive work environment.  *Porter v. Cal. Dep't. Corr.*, 419 F.3d 885, 892 (9th Cir. 2005) (addressing sexually related hostile work

OPINION AND ORDER -7

environment claims).  The "working environment must both subjectively and objectively be

perceived as abusive." *Fuller v. City of Oakland, Cal.*, 47 F.3d 1522, 1527 (9th Cir. 1995).  To

determine if the workplace is objectively hostile, courts examine the issue from the perspective of a

reasonable person with the same fundamental characteristics as the claimant.  *Id.*  Courts must

consider all the circumstances in determining whether an environment is sufficiently hostile or

abusive.  *Kortan v. Cal. Youth Auth.*, 217 F.3d 1104, 1110 (9th Cir. 2000).

 Key factors in determining whether a work environment is hostile include:

-  the frequency of the conduct;

-  the severity of the conduct;

-  whether the conduct is physically threatening or humiliating, as opposed to a mere utterance;

-  and whether the conduct unreasonably interferes with an employee's work performance.

*Harris*, 510 U.S. at 23.

 No single factor is required, and the required level of severity or seriousness "varies

inversely with the pervasiveness or frequency of the conduct." *Davis v. Team Elec. Co.*, 520 F.3d

1080, 1095 (9th Cir. 2008) (internal quotation marks and citations omitted).  Simple teasing,

offhand comments, and isolated incidents that are not extremely serious fall short of constituting a

hostile or abusive work environment.  *Id.* (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775,

788 (1998)).  A plaintiff must show that a reasonable person would find the work environment to be

"hostile or abusive," and that plaintiff perceived it to be so.  *Faragher*, 524 U.S. at 787.

 Where an employee is allegedly harassed by co-workers, the employer may be liable if it

knows or should know of the harassment but fails to take steps "reasonably calculated to end the

OPINION AND ORDER -8

harassment." *Nichols v. Azteca Rest. Enter., Inc.*, 256 F.3d 864, 875 (9th Cir. 2001) (internal quotation marks omitted).

## III.   ANALYSIS

### 1.   Discrimination claims

Defendants seek summary judgment on plaintiff's "disparate treatment" aspects of his disability and Race/Religion discrimination claims.

### A.   Disability "disparate treatment" claims

Defendants argue that even assuming plaintiff can establish that his morbid obesity and mental impairments are disabilities under the ADA and Oregon laws, these aspects of plaintiff's claims must be dismissed as a matter of law because plaintiff could not perform the essential job functions of his job with or without reasonable accommodation.  Defendants also assert that plaintiff cannot show that defendants took any adverse employment action against plaintiff because of his alleged disabilities.

Questions of fact preclude granting summary judgment to defendants regarding this aspect of plaintiff's claims.  Factual issues exist regarding whether plaintiff could perform his job with or without accommodation, and whether he suffered adverse employment actions because of his alleged disabilities.  Specifically, admissible evidence suggests that plaintiff could perform essential functions of his job in 2005.  Defendants' references to inadequate production by plaintiff during the time of the alleged discrimination fail to establish as a matter of law that plaintiff was unqualified to perform his job with or without accommodation.  Similarly, plaintiff's requests that he be excused from complying with production standards is insufficient by itself to establish as a matter of law that

OPINION AND ORDER -9

plaintiff was unqualified.  A determination as a matter of law that plaintiff could not perform his job

"with or without accommodation" is unwarranted.

Defendants' argument that there is no factual dispute that plaintiff was not subjected to

adverse employment actions as a result of his alleged disabilities is also rejected.  There are issues

of fact that preclude summary judgment regarding several examples of allegedly adverse

employment actions that plaintiff suffered.  These include plaintiff's assertion that defendants'

manager Bryce Rossman "deliberately withheld plaintiff's R.C. licensing and training, deliberately

assigned plaintiff trailers that required power equipment to unload, even though plaintiff did not

have power equipment licenses, and stated that he did so because he wanted plaintiff to 'sweat some

off his fat ass.'"  Response at 14 (citations omitted).

Defendants' argument that Rossman's alleged statement to plaintiff's supervisor constitutes

hearsay that would be barred as inadmissible is rejected.  Defendants' other arguments pertain to the

weight that a jury will likely attribute to the evidence plaintiff has presented (e.g., explaining why

other co-workers received training more quickly, dismissing Rossman's alleged comments as

"innocuous statements," and asserting that plaintiff suffered no "materially adverse consequence"

from any delay in being granted his license).  Reply at 22-23.  Such arguments provide an

insufficient basis for granting summary judgment.

Similarly, issues of fact exist regarding plaintiff's allegations that he was assigned more

difficult trailers, and the reasons for the alleged unfair assignments.  The court disagrees with

defendants that this allegation is wholly unsupported by sufficient factual data.

Determining whether plaintiff suffered adverse employment actions related to his alleged

disabilities as a result of defendants' investigations, the discipline meted out to plaintiff because of

OPINION AND ORDER -10

his production, or the basis for plaintiff's employment separation from defendants, is more difficult. However, summary judgment is nevertheless unwarranted. Regarding the record in its entirety, there are issues of fact for a jury to resolve regarding whether plaintiff suffered adverse employment actions related to his alleged disabilities.

### B.    Race/Religion "disparate treatment" claims

Defendants contend that the Race/Religion aspects of plaintiff's claims should be dismissed as a matter of law. Defendants argue that plaintiff cannot establish that he performed his job satisfactorily, or that he was treated differently than a similarly situated employee who does not belong in the same protected class.

As noted above, material issues of fact exist regarding plaintiff's job performance, defendants' reactions to that performance, and the possible explanations for those reactions. Defendants' second argument – that plaintiff cannot show that any employees outside of his protected class were treated differently than he – is insufficiently established to compel summary judgment. Plaintiff has asserted that other, non-Jewish unloaders were not subjected to the adverse employment actions that plaintiff allegedly suffered. Plaintiff allegess that co-workers received power equipment training much sooner than did plaintiff, and that plaintiff was assigned the most difficult trailers to unload. Defendants' explanations for this conduct fail to dispose of the existing questions of fact. Moreover, to the extent that defendants refer to examples of favorable treatment that plaintiff allegedly also received, those arguments fail to establish that defendants are entitled to judgment as a matter of law on this issue. Questions of fact remain regarding whether plaintiff performed his job satisfactorily, and whether he was treated differently than similarly situated employees who do not belong in the same protected class as plaintiff.

OPINION AND ORDER -11

### C.    Possible pretext

Defendants also contend that they have presented legitimate, non-discriminatory reasons for any alleged adverse employment actions, and that summary judgment is warranted on those grounds, as well.  Although this question is close on some of the alleged adverse actions, issues of fact remain regarding several others:

• the timing of plaintiff's training; (whether delays in plaintiff's training and licensing were due to animus toward plaintiff's alleged disabilities or toward his Jewish race and faith, or due to plaintiff's "own failure to demonstrate proficiency in performing" his job); Dfts.' Mem. Supp. at 22 (citations omitted);

• the trailer assignments (whether the assignments were a result of discrimination or whether this evidence is "refuted;" Reply at 24;

• the scope and fairness of plaintiff's disciplinary reports (whether plaintiff was unable to do his job, or was set up to fail and held to different standards).

Accordingly, possible pretext precludes granting summary judgment to defendants on grounds that defendants offered legitimate explanations for the adverse employment actions that plaintiff allegedly endured.

### 2.    Accommodation claims

Defendants also seek summary judgment on plaintiff's claims that they failed to accommodate plaintiff's alleged disabilities.  Defendants contend that plaintiff was not "otherwise qualified" for the unloader position, he received the training he requested, other accommodations requested by plaintiff were unreasonable, and plaintiff failed to provide the requisite medical

documentation regarding his substantial limitations and need for accommodation (and also thereby thwarted the interactive process).

The ADA "prohibits an employer from discriminating against a qualified individual with a disability by failing to make 'reasonable accommodations to the known physical or mental limitations' of that individual." *Willis v. Pacific Maritime Ass'n*, 236 F.3d 1160, 1164 (9th Cir. 2001); 42 U.S.C. § 12112(b)(5)(A) (the ADA requires making "reasonable accommodations to the *known physical or mental limitations* of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity") (emphasis provided).

Employers are required to engage in an interactive process with employees to identify and implement appropriate reasonable accommodations; this interactive process is triggered by a request for accommodation or an employer's recognition of the need for accommodation. *See Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000) (*en banc*) (vacated on other grounds by 535 U.S. 391 (2002)).

### A.    Accommodation claims prior to July 2006

As addressed above, the court has concluded that issues of fact exist regarding whether plaintiff was qualified for the job, and whether he properly received the training and licensing he requested. Whether plaintiff's requested accommodations were reasonable is also a fact-driven determination.

However, this court concludes as a matter of law that plaintiff has failed to establish that his dialogues with managers about his job prior to July 2006 should be construed as requests for

OPINION AND ORDER -13

reasonable accommodations for his limitations.  Plaintiff admitted that he received training on

defendants' ADA policies and signed their ADA training form after declining to indicate that he had

any questions about the ADA or the training.  Pl. Resp. To Dfts. CSF, Para. 22 (admitting Dfts.

CSF, Para. 22).  Plaintiff also admitted that defendants' "Reasonable Accommodation Packet"

included forms that requested employees to "identify the specific doctor and the specific medical

condition or conditions" for which accommodation is sought, or, allowed employees in the

alternative to "provide [defendants] with written documentation from his or her doctor setting forth

the Associate's disability, its substantial limitations, and the job modification needed to

accommodate those substantial limitations." *Id.*, Paras. 6-7 (admitting Dfts. Paras. 6-7).

Plaintiff alleges that he sought training and licensing after beginning his job.  Despite

plaintiff's introduction to and familiarity with defendants' ADA policies and procedures, however,

he declined to discuss any need for reasonable accommodations for his alleged disabilities until July

2006.

The standard for determining whether an employer has been put on notice that an employee

is seeking a reasonable accommodation for the employee's limitations is low: an employee need

only "inform the employer of a need for an adjustment due to a medical condition using plain

English and need not mention the ADA or use the phrase reasonable accommodation." *Barnett*, 228

F.3d at 1112 (internal quotation marks omitted).  Although an employee is not required to use any

particular language, the employer's duty is not triggered unless the employee or his or her

representative "provides the employer with enough information that, under the circumstances, the

employer can be fairly said to know of both the disability and desire for an accommodation."

*Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 313 (3d Cir. 1999); *see also Summers v. A. Teichert*

*& Son*, 127 F.3d 1150, 1153 (9th Cir. 1997) (holding no triable issue of fact existed where employee had not asked for accommodation). The employee's request for an accommodation has been viewed as the predicate requirement that triggers the interactive process. *Kratzer v. Rockwell Collns, Inc.*, 398 F.3d 1040, 1045 (8th Cir. 2005) (citation and internal quotation omitted). Merely asserting that an accommodation was needed is insufficient; "the employee must inform the employer of the accommodation needed." *Id*. (citing *Mole v. Buckhorn Rubber Products, Inc.*, 165 F.3d 1212, 1217 (8th Cir. 1999). The Eighth Circuit in *Mole* recognized that generally, it is the responsibility of the individual with a disability to inform the employer that an accommodation is needed. *Mole*, 165 F.3d at 1217 (citations omitted).

This court concludes that as a matter of law, there is no evidence (beyond plaintiff's own unsupported assertions) that before July 2006 plaintiff provided sufficient information to place defendants on fair notice that plaintiff was limited by disabilities and was seeking accommodations because of those limitations. Accordingly, defendants are entitled to summary judgment on plaintiff's accommodations claims that pre-date July 2006.

Whether defendants are entitled to summary judgment on the accommodations claims that arise as of July 2006 because plaintiff refused to provide necessary medical documentation is a closer issue. However, the court concludes that summary judgment is proper for those claims as well.

## B.    Accommodation claims from July 2006

Defendants acknowledge that plaintiff requested reasonable accommodation for his disabilities on or after July 21, 2006. However, defendants assert that they had no duty to

accommodate these requests because plaintiff never provided the requested medical documentation of his substantial limitations and need for accommodation.

Defendants requested medical information from plaintiff in July 2006, after plaintiff advanced his requests for accommodation.  Undisputed evidence establishes that defendants' representatives met with plaintiff on several occasions, including immediately after plaintiff's request in July 2006, to discuss possible accommodations.  Plaintiff was provided with defendants' ADA policy packet at least twice, and repeatedly asked plaintiff to provide medical information regarding his substantial limitations and what accommodations he might need.

Plaintiff does not dispute that he declined to complete the accommodation form.  Instead, he acknowledges that he protested that the form was "not appropriate" and "unrelated to his need for reasonable accommodation."  Pl. Resp. To Dfts. CSF, Para. 6 (citation omitted).  As already noted, plaintiff also has acknowledged that defendants permitted employees to avoid completing the form by choosing to provide defendants "with written documentation from [a] doctor setting forth the . . . disability [at issue], its substantial limitations, and the job modification needed to accommodate those substantial limitations."  *Id.*, Paras. 6-7 (admitting Dfts. CFS, Paras. 6-7).

Plaintiff attempts to excuse his non-compliance with these aspects of the interactive process with defendants by dismissing defendants' efforts as "simply provid[ing] plaintiff with some paperwork, then flatly refus[ing] to take any further steps until plaintiff provided unnecessary medical information."  Plaintiff's Response at 25.

Plaintiff contends that the medical information was "unnecessary" because plaintiff's obesity is obvious.  *Id*.  However, counsel's reliance upon a defense witness's speculation that obesity might be listed as an example of a disability in defendants' ADA policies is unsupported by the record of

OPINION AND ORDER -16

evidence.  Moreover, obesity, by itself, may not constitute an ADA-recognized disability.  *See EEOC v. Watkins Motor Lines, Inc.*, 463 F.3d 436, 441 (6th Cir. 2007) (holding that only obesity that results from a physiological disorder may constitute a disability under the ADA); *Cook v. Rhode Island, Dep't of Mental Health, Retardation, & Hosps.*, 10 F.3d 17, 23 (1st Cir. 1993) (holding that a jury *may* conclude that morbid obesity constitutes a disability, in cases in which the plaintiff presents expert testimony that the morbid obesity at issue "is a physiological disorder involving a dysfunction of both the metabolic system and the neurological appetite-suppressing signal system, capable of causing adverse effects within the musculoskeletal, respiratory, and cardiovascular systems").

Far from being "unnecessary," defendants' carefully tailored options for how to identify the limitations imposed by disabilities on employees who are requesting accommodations appear fairly designed to gather information that is essential to providing defendants fair notice of the limitations, and the accommodations needed.  Regardless of plaintiff's appearance, he is not entitled to refuse to provide information that is critical to initiating a meaningful interactive process directed at determining reasonable accommodations for him, and then later protest that he was unfairly deprived of those accommodations.

The record of evidence also establishes that defendants persisted in seeking the necessary medical information from plaintiff, and attempted to address plaintiff's accommodation request, despite plaintiff's refusal to cooperate.  This evidence includes interactive dialogues with plaintiff's physician to obtain information to assist in accommodating plaintiff.

By the time plaintiff began to cooperate in the interactive process, he was on paid, personal leave and was no longer reporting to work. Plaintiff thereafter deprived defendants of an opportunity to provide him with reasonable accommodation in the workplace.

This court concludes that plaintiff's refusal to provide critical information or otherwise cooperate with defendants regarding his alleged need for accommodations due to his disabilities constitutes a failure on the part of plaintiff to meaningfully participate in the interactive process that is required of both employer and employee. Without a sufficient identification and evaluation of the limitations imposed by plaintiff's disabilities, defendants were deprived of an opportunity to provide an appropriate accommodation. Defendants are therefore entitled to summary judgment on plaintiff's accommodations claims. *See Kratzer*, 398 F.3d at 1045.

**3.      Workers compensation claims**

Plaintiff asserts that defendants discriminated and retaliated against him for filing a workers' compensation claim by:

•      withholding his annual pay increase;

•      placing an attendance discipline in his personnel file for the day of the accident;

•      returning plaintiff to his position "in a hostile work environment;"

•      attempting to use the workers' compensation system to obtain accommodation-related medical records and

•      terminating Hayes's employment.

Under Oregon law, an employer may not discriminate against a worker for invoking the workers' compensation system. ORS 659A.040(1). To advance his claim for workers' compensation discrimination, plaintiff is required to establish that (1) he invoked the workers'

OPINION AND ORDER -18

compensation system; (2) he was discriminated against in the tenure, terms or conditions of his

employment; and (3) defendants discriminated against him in the tenure or terms of employment

because he invoked the workers' compensation system. *Kirkwood v. W. Hyway Oil Co.*, 129 P.3d

726, 729 (Or. Ct. App. 2006) (citations and quotation omitted).

There is no dispute that plaintiff filed a workers' compensation claim, and that he was later

separated from employment. The parties dispute whether there are any questions of fact regarding

possible adverse employment actions suffered by plaintiff, and if any such actions were connected

to plaintiff's workers' compensation claim.

Plaintiff argues that there are factual disputes regarding why his pay increase was delayed

until two months after he returned from leave, and then only after he complained, why he was

assigned to the Traffic department (and whether defendants knew that department was openly

hostile to him), and whether defendants "pried into plaintiff's Jewish faith unnecessarily during [the]

processing of plaintiff's workers' compensation claim." Plaintiff's Response at 29-30 (citation

omitted).

Conflicts between the evidence presented by the employer and the employee in workers'

compensation retaliation cases can preclude summary judgment. *Kirkwood*, 129 P.3d at 729.

However, the conflicts presented here arise between the evidence presented, and the unsupported

allegations of workers' compensation discrimination asserted by plaintiff.

The alleged delay in receiving a pay increase could be an adverse employment action.

However, there is no evidence that the delay occurred because plaintiff filed a workers'

compensation claim. Defendants' uncontradicted evidence is that defendants acted consistently with

their policies in interpreting plaintiff's eligibility for a pay raise after his prolonged leave of absence.

Defendants' compliance with policies, and subsequent decision to adjust plaintiff's back pay, reveal no issues of fact regarding whether the delay was an adverse employment action related to plaintiff's workers' compensation claim.

Similarly, defendants complied with its attendance policy by noting an attendance "Occurrence" when plaintiff experienced an unexcused absence.  In accordance with that policy, the attendance Occurrence was deleted from plaintiff's record after the determination that his absence would last longer than three days and was due to a compensable injury.  Defendants' compliance with policies, and subsequent decision to amend the attendance record, reveal no issues of fact regarding whether the documentation was an adverse employment action related to plaintiff's workers' compensation claim.

Plaintiff's allegations that (1) the Traffic department was overtly hostile toward him prior to his placement there, and (2) that defendants knew that and attempted to assign him in retaliation for plaintiff's workers' compensation claim, are insufficiently supported in the record to preclude summary judgment.  The supporting declaration of co-worker Ann E. Marie provides some evidence that another co-worker, possibly in the Traffic department, was hostile to plaintiff, but this fails to establish that assigning plaintiff to that department was an adverse employment action, or that the assignment was done in retaliation to the workers' compensation claim.  The remaining evidence relevant to this aspect of plaintiff's claim establishes that defendants investigated plaintiff's concerns and found no basis to believe that the Traffic department was hostile to plaintiff.

The allegation that defendants "pried into plaintiff's Jewish faith during the processing of plaintiffs workers' compensation claim" is insufficiently supported and lacks any evidence that

OPINION AND ORDER -20

suggest that the processing was retaliatory. Similarly, there is no evidence that defendants used the process to get medical records in retaliation for plaintiff's workers' compensation claim.

Finally, no evidence is presented that defendants were motivated to terminate plaintiff because of his workers' compensation claim. Defendants have presented legitimate, non-discriminatory reasons for why plaintiff was separated from his employment, and there is no evidence that these reasons could be construed as pretext for workers' compensation discrimination. Defendants are entitled to summary judgment on plaintiff's claims related to alleged workers' compensation retaliation.

## IV.    CONCLUSION

Defendants' Motion to Strike Evidence [102] has been considered and is denied. Defendants' motion for partial summary judgment [74] is granted in part as addressed herein. Trial regarding the remaining issues is set to commence on March 29, 2011. The Pretrial Conference is scheduled for March 18, 2011.

IT IS SO ORDERED.

DATED this   17   day of February, 2011.


        /s/ Ancer L. Haggerty
          Ancer L. Haggerty
      United States District Judge


OPINION AND ORDER -21